**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAMES HARRY HODSON, III,           )
                Petitioner,           )
                             )      **C.A. No. 05-92 Erie**
    v.                             )
                             )      **District Judge McLaughlin**
MARILYN BROOKS, et al.,            )      **Magistrate Judge Baxter**
               Respondents.           )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.    RECOMMENDATION

      It is respectfully recommended that the Petition for Writ of *Habeas Corpus* be dismissed, that this Court's proposed findings of fact and conclusions of law be adopted, and that a certificate of appealability be denied.

## II.    REPORT

      This is a petition for writ of *habeas corpus* filed by a state prisoner incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"). Petitioner is serving a sentence of 4 to 8 years of incarceration that was imposed on July 26, 2000, for his conviction of Involuntary Deviate Sexual Intercourse (18 Pa.C.S.A. § 3123(2)) and Simple Assault (18 Pa.C.S.A. § 2701(a)(1)). Respondents have submitted the relevant portions of the state court record in hard-copy format and the documents contained therein are indexed and numbered 1 through 26. The state court record will be cited to as "SCR No. __"

      **A.    Relevant Procedural History**

      Petitioner filed a motion for a new trial on August 7, 2000, which was denied, after hearing, on September 27, 2000. On or about November 2, 2000, Petitioner filed a *pro se* petition for Post Conviction Collateral Relief ("PCRA petition") with the state court, which was subsequently amended by Petitioner's court-appointed counsel on December 28, 2000. In his PCRA petition, Petitioner alleged that his trial counsel rendered ineffective assistance by:

          1.      Failing to file a motion to suppress his police statement;

2.    Failing to object to the Commonwealth's request made after jury
selection to amend the "to wit" section of Count V - Involuntary
Deviate Sexual Intercourse;

3.    Failing to request a mistrial when the prosecutor made reference
in his opening statement that defense counsel was a public
defender;

4.    Failing to present evidence concerning the alleged victim's mental
state prior to the alleged incident in question;

5.    Failing to introduce evidence that the alleged victim was taking
several types of strong medication prior to and during the alleged
incident in question;

6.    Failing to introduce evidence that some or all of the prosecution
witnesses were biased against the Petitioner in some manner; and

7.    Failing to file a direct appeal with the Pennsylvania Superior
Court.

(SCR No. 10 at p. 4).

On April 9, 2001, Petitioner's amended PCRA petition was granted insofar as Petitioner was

allowed the right to file a direct appeal to the Pennsylvania Superior Court *nunc pro tunc.* (SCR

No. 11). Petitioner filed a Notice of Appeal with the Superior Court on April 10, 2001, and raised

the following issues on appeal:

1.    Whether the trial court erred in allowing the prosecution to amend
the "to-wit" section of one of the IDSI counts after the jury had
been selected?

2.    Whether appellant's trial counsel rendered ineffective assistance
of counsel by failing to file a Motion to Suppress his statement to
the police?

3.    Whether appellant's trial counsel rendered ineffective assistance
of counsel by failing to request a mistrial when the prosecutor
referred to trial counsel as "Mr. Public Defender" in his opening
statement?

4.    Whether appellant's trial counsel rendered ineffective assistance
of counsel by failing to attempt to impeach the victim's credibility
due to her deteriorated mental condition and due to her alcohol and
drug induced intoxicated condition at the time of the incident?

(SCR No. 13 at p. 7).

On December 18, 2001, the Superior Court affirmed the judgment of the trial court, finding

Petitioner's claims of ineffective assistance of counsel meritless and, with regard to the first issue,

2

finding that, "[a]s the amendment did not add any new elements to the original charges, the trial court did not err by amending the criminal information." (SCR No. 15). Petitioner subsequently filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court on January 14, 2002, which was denied on May 31, 2002.

On September 27, 2002, Petitioner filed a second *pro se* PCRA petition with the trial court, which was treated by the trial court as a first PCRA petition because the original PCRA petition "merely resulted in the granting of an appeal *nunc pro tunc*." (SCR No. 20 at p. 7). In this PCRA petition, Petitioner claimed that he is entitled to PCRA relief by reason of the following:

1. The ineffectiveness of appellate counsel in the following respects:

   a. For failing to adequately raise and argue that trial counsel was ineffective for:

      I. For failing to file a motion to suppress defendant's statement to the police.

      ii. For failing to impeach the victim's credibility due to her deteriorated mental condition and due to her alcohol and prescription drug intoxication at the time of the incident.

   b. For failing to raise the sufficiency of the evidence and mistake of fact jury instruction.

   c. For failing to seek a mistake of fact instruction to the jury.

   d. For failing to argue that the Commonwealth's evidence was insufficient to prove the crime of Count 5, involuntary deviate sexual intercourse beyond a reasonable doubt.

   e. For failing to argue that the Commonwealth did not provide the defendant with formal written notice with respect to Count 5, involuntary deviate sexual intercourse.

   f. For failing to argue that the Commonwealth violated the discovery rules for not providing the defendant with the name of Becky Sterling who was called as a witness.

   g. For failing to argue that the Commonwealth did not disclose evidence with respect to a rape kit.

   h. For failing to argue that trial counsel committed reversible error by introducing evidence that the defendant allegedly committed a prior rape of the victim – a prior bad act or other crime.

i.      For failing to argue that trial counsel was ineffective for not requesting specific jury instructions as to consent as a defense, mistake of fact as to consent and other crimes and bad acts.

j.      For failing to argue that trial counsel was ineffective for not requesting a continuance after Count 5 was amended at the beginning of the trial.

k.      For failing to argue that trial counsel was ineffective for not questioning Officer Trenga about the victim's prior inconsistent statement concerning the incident in question.

l.      For failing to argue that trial counsel is ineffective by not interviewing defense witnesses prior to trial.

m.      For failing to argue that trial counsel was ineffective for failing to file a motion for pretrial discovery.

n.      For failing to argue that trial counsel was ineffective for failing to ask for a continuance after the Commonwealth called Becky Sterling as a witness since she was not on the witness list.

2.      That the trial court committed the following errors:

a.      The court erred when it permitted trial counsel to introduce evidence of a prior rape of the victim by the defendant.

b.      The trial court erred when it admitted the victim's testimony as to the prior rape by the defendant.

c.      The trial court erred when it failed to issue a specific cautionary instruction with respect to prior bad acts.

(SCR No. 18 at pp. 4-6).

Petitioner's second PCRA petition  was subsequently amended by Petitioner's court-appointed counsel on January 17, 2003.  In his second amended PCRA petition, Petitioner raised the following issues:

1.      Trial counsel provided ineffective assistance of counsel in the following particulars:

a.      By soliciting and introducing evidence at trial that the defendant had previously raped the victim two or three months prior to the date in question.

b.      By failing to seek a charge to the jury respecting evidence of other crimes and bad acts.

c.      By failing to seek a charge as to consent as a defense and mistake of fact as to consent.

4

       d.     By failing to impeach the victim's testimony of evidence regarding her prior inconsistent statements of the number of rapes alleged to have been committed by the defendant on [the date of the alleged incident in question].

    2.     That appellate counsel rendered ineffective assistance by failing to raise and preserve these claims of ineffectiveness of trial counsel.

(SCR No. 19).

In determining whether there were any viable issues raised in the second PCRA petition that required an evidentiary hearing, the trial court chose to consider the claims Petitioner raised, *pro se*, as well as the five (5) claims raised by his counsel in the amended petition. (SCR No. 20 at p. 10). However, the trial court preliminarily determined that "[t]he following claims that are set forth in the [Petitioner's] pro se latest petition had been previously litigated and will not be considered by us now:

    1.     Failure of counsel to file a motion to suppress defendant's statement to the police.

    2.     Failure of counsel to impeach the victim's credibility due to her deteriorated mental condition and due to her alcohol and prescription drug intoxication at the time of the incident.

    3.     Failure of counsel to argue that the Commonwealth did not provide the defendant with formal written notice with respect to Count 5, involuntary deviate sexual intercourse."

(Id.).[1]  The trial court ultimately decided that four issues warranted an evidentiary hearing, and a hearing was thereafter held on June 2, 2003.[2]  After holding the evidentiary hearing, the trial court issued a Memorandum and Order dated October 1, 2003, denying Petitioner's second amended PCRA petition. [SCR No. 22].  On October 31, 2003, Petitioner appealed the denial of his second amended PCRA petition to the Pennsylvania Superior Court, which affirmed the denial on September 8, 2004. [SCR No. 26].

---

[1]

The Court determined that these claims had already been decided by the Superior Court on direct appeal, which decision became final thirty days after the Supreme Court denied allocatur. (Id.).

[2]

None of the four issues on which a hearing was held is relevant to this proceeding.

5

Petitioner filed the instant *pro se* petition for writ of *habeas corpus* on March 22, 2005.  In his habeas petition, Petitioner claims his Fifth Amendment rights were violated by the police officer who took his statement.  In particular, Petitioner claims: (i) he was under the influence of drugs and alcohol at the time he gave the statement; (ii) he was not given his Miranda warnings before making the statement; and (iii) he was never told, and was confused about, the reason he was being questioned at the time he gave the statement.  Petitioner also claims in his petition that "[d]irect appellate counsel failed to adequately raise and argue [the] issues of fifth amendment violations on appeal." (Document # 3, Petition, at ¶ 13).  As  relief for these claims, Petitioner seeks an Order vacating his conviction and sentence and granting him a new trial.

Respondent filed an Answer and brief in response to the Petition, arguing that it should be dismissed because:  (i) it was filed beyond the applicable statute of limitations; (ii) Petitioner has failed to exhaust his state court remedies; and (iii) Petitioner's Fifth Amendment rights were not violated. [Document ## 15 and 16].  Petitioner then filed a reply brief, in which he claims that "his trial counsel rendered ineffective assistance of counsel for failing to file a motion to suppress his incriminating statement made to police," and his "appellate counsel, Edward J. Hatheway, Esq. rendered ineffective assistance of counsel for failing to adequately raise and argue on direct appeal whether trial counsel was ineffective for failing to file a motion to suppress his statement made to police." (Document # 22, Petitioner's Reply Brief, at pp. 9-10).

On April 24, 2006, Petitioner filed a motion for evidentiary hearing to more fully develop those facts that were not adequately addressed in the state courts.  The motion was granted by this Court and an evidentiary hearing was ultimately held on December 21, 2006, after multiple continuances.  Thomas W. Patton, Esq., of the Federal Public Defender's Office was appointed to represent Petitioner at the hearing.  Proposed findings of fact and conclusions of law derived from the evidence and testimony that was presented at this hearing are set forth infra, at Section I.

**B.     Relevant Factual History Presented at Trial**[3]

Petitioner met the alleged victim, Lynne Devore ("Devore"), while they were working at the Elk's Club in September 1998. (TT at pp. 56, 273). They began dating in or around November 1998, and the relationship became sexually intimate in December 1998. (TT at pp. 60, 274-75). On the Monday before June 17, 1999, Petitioner went to Tennessee to "do a moving job." (TT at pp. 282-83). The next day, Petitioner and Devore had a telephone conversation, during which Devore told Petitioner that her friend had died. (TT. 99, 283).

Petitioner returned from Tennessee on Thursday, June 17, 1999, around 6:00 p.m., at which time he made a telephone call to Devore at her home, but Devore didn't answer because she was attending her friend's wake. (TT at p. 101, 284). Later that night, Petitioner again tried to contact Devore by telephone on three more occasions, the last occurring around 1:30 a.m., but none of his calls were answered. (TT at pp. 284-85). As a result, Petitioner went to Devore's apartment around 2:00 a.m. on the morning of Friday, June 18, 1999, and waited for her at her door. (TT at 286). Soon after Petitioner arrived at Devore's apartment, Devore was dropped off at her apartment by a male friend, and Petitioner witnessed Devore giving the man a hug and kiss. (TT at pp. 63, 287-88). Petitioner became angry about the fact that Devore had kissed her male friend, grabbed Devore by her hair, followed her into her apartment, and pulled her into her bedroom. (TT at pp. 64-67, 289). Petitioner then began yelling at Devore, calling her a cheater and a whore, (TT at pp. 67, 289-90). After a heated exchange, Devore testified that Petitioner then ripped her pants off, held her arms, and started performing oral sex on her against her will. (TT at pp. 68-69). From there, both parties testified that they had numerous sexual encounters throughout the weekend, most of which consisted of Petitioner performing oral sex on Devore.

On the night of Saturday, June 19, 1999, after the parties engaged in another heated argument, Devore swallowed a number of tranquilizers and sleeping pills. (TT pp. 76-77, 317-321).

---

[3]

The transcript of the trial court proceedings is included with the State Court Records filed in this case as part of Document # 16, at tab number 4. References to the trial transcript will be identified by the abbreviation "TT," followed by the relevant page number(s).

After discovering that Devore had swallowed the pills, Petitioner called a number of hospitals to ask for advice on how to treat a drug overdose. (TT at pp. 77, 321). According to Petitioner, Devore refused to go to the hospital for treatment, fell asleep until 1:00 a.m., and then fell back asleep until approximately 10:30 a.m. on Sunday morning. (TT at pp. 323-325). Petitioner ultimately left Devore's apartment at 1:00 p.m. on Sunday afternoon. (TT at p. 331).

On Monday, June 21, 1999, Petitioner gave a tape recorded statement to Police Officer Vincent Trenga ("Trenga"), regarding his weekend with Devore. (See transcript of tape recorded police statement filed at Document # 21). Included in this statement is the following exchange:

> TRENGA:  You're telling me you were upset, but you still wanted to have sex with her?
>
> HODSON:  Yeah.
>
> TRENGA:  You think you might have forced it on her?
>
> HODSON:  In a sense, yeah.
>
> TRENGA:  But did she ever tell you no, or stop.
>
> HODSON:  She goes, well, she actually would say I don't want you to and then I would go down on her.
>
> TRENGA:  Meaning you would go between her legs and have oral sex?
>
> HODSON:  Yeah.

(Document # 21 at p. 10).

Petitioner was ultimately charged on August 4, 1999, with one count each of Rape, 18 Pa.C.S.A. § 3121(1); Sexual Assault, 18 Pa.C.S.A. § 3124.1; Simple Assault, 18 Pa.C.S.A. § 2701(a)(1); and two counts of Involuntary Deviate Sexual Assault ("IDSI")(fellatio), 18 Pa.C.S.A. §§ 3123(1) and (2). (SCR No. 1). On May 15, 2000, just prior to the commencement of trial, the Commonwealth filed a motion to amend the criminal information to change the "To-Wit" section of the IDSI charge at Count V of the information, by replacing the word "fellatio" with the word "cunnilingus." (SCR No. 2). This motion was granted by the trial court, and the IDSI charge at Count V of the criminal information was amended to read as follows:

V.    INVOLUNTARY DEVIATE SEXUAL INTERCOURSE
18 Pa.C.S.A. § 3123(a)(1); Grade F1/20 yrs./$25,000; Mandatory: N
engage in deviate sexual intercourse with another person by forcible
compulsion, TO WIT:  The Defendant did, on or about June 18, 1999, to
June 20, 1999, by forcible compulsion, forced Lynne A. Devore to submit
to cunnilingus by the Defendant at her residence at 366½ North Street in
the city of Meadville, Crawford County, Pennsylvania.

(SCR No. 3).

At trial, Petitioner was confronted with the above-quoted portion of his police statement at

various times during cross examination, in response to which he gave the following testimony:

Q.    You're telling me you were upset but you still wanted to have sex
with her.  Your answer, Yeah.  Patrolman Trenga, you think you
might have forced it upon her.  Your answer, in a sense, yeah.  But
did she ever tell you no or stop.  She goes - - well she would
actually say, I don't want you to and then I would go down on her.

A.    Yes.

Q.    You went down on her after she said, No, I don't want you to?

A.    Yes.

                    *                    *                    *

Q.    Question, you think you might have forced it on her.  Your answer,
in a sense, yeah.  Which time were you referring to?

A.    Saturday.

Q.    You were referring to Saturday?

A.    Yes.

Q.    Okay.  Next one, were you also referring to Saturday when - -
when you said - - but did she ever tell you no or stop and your
answer was, she goes - - Well she actually would say I don't want
you to and then I would go down on her.  Is - - is that also referring
to Saturday?

A.    Yes, it was.

                    *                    *                    *

A.    Okay.  I started kissing her and fondling her and pressing her body.

Q.    Um hum.  Okay.

A.    And I performed oral sex on her.

Q.    And then was the time it - - this was the sexual incident on
Saturday that she said, No, I don't want you to?

9

A.    Yes.

Q.    Ans you continued nonetheless?

A.    Yes.

                    *                    *                    *

Q.    You didn't - - you said that you were very persistent?

A.    Yes.

Q.    You did not use force?

A.    No.

Q.    Okay.  She didn't want to have sex so you stopped?

A.    Yes.

Q.    Okay.  And after she didn't want to have sex, you were still persistent?

A.    Yes.

Q.    And by persistent, you mean oral sex?

A.    Yes.

(TT at pp. 373, 376, 386, 444).

   At the conclusion of Petitioner's jury trial, Petitioner was acquitted of the Rape, Sexual Assault, and IDSI (Fellatio) charges, but was found guilty of committing Simple Assault and IDSI (Cunnilingus).  He was sentenced to serve four (4) to eight (8) years imprisonment for the IDSI conviction, and was ordered to pay a fine of $ 100 for the Simple Assault conviction. (SCR No. 5).

   **C.    Statute of Limitations**

   Respondent argues that Petitioner's claims are time-barred under the one-year statute of limitations set forth in 28 U.S.C. § 2244(d), as follows:

   (1)    A one year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

   (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

10

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Based on the foregoing statute, Respondent argues that the one-year limitation period in this case began to run on May 31, 2002, the date on which Petitioner's direct appeal to the Pennsylvania Supreme Court was denied. Petitioner's habeas petition was filed on March 22, 2005, nearly three years after the conclusion of Petitioner's direct appeal.[4] Consequently, Respondent argues that Petitioner's habeas petition is time-barred and should be dismissed. This argument, however, overlooks the application of 28 U.S.C. § 2244(d)(2), which provides:

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any limitation under this subsection.

In this case, Petitioner filed his second PCRA petition with the State trial court on September 27, 2002, which petition remained pending until the Pennsylvania Superior Court affirmed the trial court's denial of the PCRA petition on September 4, 2004. Taking into account the statutory tolling period provided by 28 U.S.C. § 2244(d)(2), the statutory limitation period ran

---

[4]

Respondent claims that the filing date for Petitioner's habeas petition was July 18, 2005, which is the approximate date the District Attorney entered her appearance in this case. The actual filing date, however, was March 22, 2005, the date the Clerk received Petitioner's habeas petition pending this Court's disposition of Petitioner's *in forma pauperis* application.

for only 288 days prior to the filing of Petitioner's habeas petition.[5]   Thus, Petitioner's habeas petition was, in fact, filed within the one year limitation period set forth in 28 U.S.C. § 2244(d).

### D.   Exhaustion

Before addressing the merits of Petitioner's claims, this Court must first determine whether constitutional and federal law issues have first been fairly presented to the state courts through direct appeal, collateral review, state habeas corpus proceedings, mandamus proceedings, or other available procedures for judicial review.  See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).  28 U.S.C. § 2254(b) requires a state prisoner to exhaust all available state court remedies before seeking federal relief.  This exhaustion requirement serves to protect the interest of comity, which ensures that the state courts have the first opportunity to address and correct violations of state prisoners' federal rights.  Rose v. Lundy, 455 U.S. 509, 518 (1982); Preiser v. Rodriguez, 411 U.S. 475, 491 (1973).  Generally, in order to satisfy the exhaustion requirement, "a state prisoner seeking federal habeas relief must present each of his claims to the state's highest court."  Story v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994).  See also Wojtczak v. Fulcomer, 800 F.2d 353 (3d Cir. 1986).  The petitioner has the burden of establishing that exhaustion has been met.  Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state prisoner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995).  A petitioner shall not be deemed to have exhausted state remedies

---

[5]

While the limitation period began to run on May 31, 2002, it was tolled by the filing of Petitioner's PCRA petition on September 27, 2002, at which time a total of 119 days had counted toward the one year limitation period.  The limitation period then continued to run from September 4, 2004, the date the Pennsylvania Superior Court affirmed the denial of the PCRA petition, until March 22, 2005, the date Petitioner's habeas petition was filed - a period of 169 days.  Thus, a total of only 288 days counted toward the one year limitation period at the time Petitioner filed this action.

if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). Federal courts may entertain the merits of a petition for habeas corpus where state remedies have not been exhausted "when no appropriate remedy exists at the state level or when the state process would frustrate the use of an available remedy." Story, 26 F.3d at 405; Hankins v. Fulcomer, 941 F.2d 246, 249 (3d Cir. 1991). If the "petitioner has no opportunity to obtain redress in state court or where the state corrective process is so defective as to render any effort to obtain relief futile," exhaustion is not required. Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986) citing Duckworth v. Serrano, 454 U.S. 1, 3 (1981). See also Hankins, 941 F.2d at 249-250 (exhaustion is excused if state process offers no hope of relief).

### E.    Procedural Default Doctrine

In addition, a federal court may be precluded from reviewing claims under the procedural default doctrine. Gray v. Netherland, 518 U.S. 152 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 678 (3d Cir. 1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system; it is based upon the "independent and adequate state ground" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

A state's procedural rules are entitled to deference by federal courts and a petitioner's violation of a state procedural rule may constitute an independent and adequate state ground for denial of federal review of habeas claims. Id.; Sistrunk, 96 F.3d at 673. In order to prevent federal habeas corpus review under the procedural default doctrine, a state procedural rule must be "consistently or regularly applied." Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997), quoting, Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988). Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 116 S.Ct.

1027 (1996); <u>Carter</u>, 62 F.3d at 595. Federal habeas review is not available to a petitioner whose constitutional claims have not been addressed on the merits due to procedural default unless a petitioner can demonstrate: 1) cause for the default <u>and</u> actual prejudice as a result of the alleged violation of federal law; or 2) that failure to consider the claims will result in a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750; <u>Carter</u>, 62 F.3d at 595.

### F.    Exhaustion/Default of Petitioner's Claims

#### 1.    "Fair Presentation"

This Court's initial inquiry regarding the exhaustion requirement is whether Petitioner has "fairly presented" his federal claims to the state courts. To meet the fair presentation criterion, the same factual and legal bases for a claim must be presented to the state court to allow the state a reasonable opportunity to address the claim and correct any violation of federal rights. <u>Duncan v. Henry</u>, 513 U.S. 364 (1995) (*per curiam*). "Fair presentation requires that, before a particular claim may be asserted in federal court, the same method of analysis must have been made available to the state court." <u>Chaussard v. Fulcomer</u>, 816 F.2d 925, 928 (3d Cir.1987).

It is important that Petitioner's claims here must have been presented in the same manner and arguing the same violations of constitutional law in order to have been "fairly presented" to the state courts. <u>Szuchon v. Lehman,</u> 273 F.3d 299, 321-324 (3d Cir. 2001). Here, there is no doubt that Petitioner's reply brief claims that his trial counsel was ineffective for failing to file a motion to suppress his police statement, and that his appellate counsel was ineffective for failing to adequately raise and argue trial counsel's ineffectiveness in this regard, were fairly presented to the state courts and were, thus, exhausted. The same cannot be said, however, with regard to the claims raised in the habeas petition itself.

In the habeas petition, Petitioner is arguing that direct appellate counsel was ineffective for failing to raise and argue certain Fifth Amendment violations on appeal. This argument was never presented in the same manner to the state courts. The closest issue that was presented to the state courts is Plaintiff's argument in his second *pro se* PCRA petition that appellate counsel was ineffective for failing to adequately raise and argue that trial counsel was ineffective for failing to

14

file a motion to suppress Petitioner's statement to the police. No specific reference to Fifth Amendment violations were raised by Petitioner in making this argument, nor were the state courts asked to consider whether trial or appellate counsel was ineffective for failing to raise such issues. Thus, Petitioner's habeas petition claims concerning Fifth Amendment violations have not been fairly presented to the state courts.

Notwithstanding, federal courts may entertain the merits of Petitioner's unexhausted habeas claims when no appropriate state remedy is available to exhaust. This Court must determine whether Petitioner has an available state remedy under the PCRA for the unexhausted claims. Claims cognizable under the PCRA are not exhausted; claims precluded under the PCRA are deemed exhausted (but may be procedurally barred).

## 2.    Availability of PCRA Relief

Under the PCRA,[6] a petitioner may obtain relief if he pleads and proves that his conviction resulted from certain infringements of his rights, including a violation of the Constitution of the United States. The PCRA limits the types of claims that are cognizable and the petitioner bears the burden of demonstrating eligibility for relief. Commonwealth v. Christy, 540 Pa. 192, 656 A.2d 877, cert. denied, 516 U.S. 872, 116 S.Ct. 194 (1995). Before a petitioner is eligible for PCRA relief, however, he must establish that his claims have not been "previously litigated" or "waived." 42 Pa. Cons. Stat. § 9543(a)(3) (as amended). Under the amended PCRA, a matter has been "previously litigated" if: 1) the highest appellate court in which the petitioner could have review as a matter of right has ruled on the merits of the issue; or 2) the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa. Cons. Stat. § 9455(a) (as amended). Claims are "waived" if they could have been raised and were not before trial, at trial or on direct appeal, and the failure to do so was not the result of trial strategy. Id.

---

[6]

42 Pa. Cons. Stat. §§ 9541-9546 (as amended by Act No. 1995-32).

In addition, the PCRA provides a one-year limitations period for filing a PCRA petition, including a second petition, which begins running when a petitioner's judgment of sentence becomes final.[7] 42 Pa. Cons. Stat. § 9545(b)(1). In Commonwealth v. Banks, 556 Pa. 1, 726 A.2d 374, 375 (1999), the Pennsylvania Supreme Court determined that the limitations period in the PCRA was jurisdictional. See Lines v. Larkins, 208 F.3d at 164, n.17.

Petitioner is clearly unable to present his unexhausted claims in the state courts, as the limitation period for filing a PCRA petition has long passed; therefore, Petitioner's habeas claims are deemed exhausted.

### 3.    Procedural Default

Although Petitioner has technically "exhausted" all of his habeas claims, his failure to present the Fifth Amendment claims to the Pennsylvania courts in an appropriate and timely manner results in procedural default of them. As a matter of state law, absent extraordinary circumstances, post-conviction claims are waived if they could have been raised on direct appeal. Commonwealth v. McGriff, 432 Pa. Super. 467, 638 A.2d 1032 (1994); Commonwealth v. Eaddy, 419 Pa. Super. 48, 614 A.2d 1203 (1992), appeal denied, 534 Pa. 636, 626 A.2d 1155 (1993); Commonwealth v. Lyons, 390 Pa. Super. 464, 568 A.2d 1266 (1989), appeal denied, 525 Pa. 663, 583 A.2d 792 (1990); Commonwealth v. Craddock, 370 Pa. Super. 139, 535 A.2d 1189 (1988), aff'd, 522 Pa. 491, 564 A.2d 151 (1989). This waiver applies even when a first time post-conviction petitioner fails to obtain direct appellate review of the conviction. Commonwealth v. Stark, 442 Pa. Super. 127, 658 A.2d 816 (1995); Eaddy, 614 A.2d at 1208.

Notwithstanding, Pennsylvania law recognizes an exception to the waiver rule if a strong *prima facie* showing is offered that a miscarriage of justice may have occurred or if extraordinary circumstances prevented the petitioner from raising the issues on direct appeal. Commonwealth

---

[7]

A judgment becomes final for PCRA purposes "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa. Cons. Stat. § 9545(b)(3).

v. Lesko, 509 Pa. 67, 501 A.2d 200 (1985), reargument denied, 509 Pa. 625, 506 A.2d 897 (1986), cert. denied, 479 U.S. 1101 (1987); Commonwealth v. Box, 305 Pa. Super. 81, 451 A.2d 252 (1982). Petitioner bears the burden of demonstrating the existence of extraordinary circumstances sufficient to justify exception to waiver. Commonwealth v. Fox, 476 Pa. 475, 383 A.2d 199 (1978); Commonwealth v. Strickland, 306 Pa. Super. 516, 452 A.2d 844 (1982).

Here, Petitioner has not presented his Fifth Amendment habeas claims in either his direct appeal of, or collateral attacks on, his conviction. These claims are defaulted. Petitioner's failure to comply with the Pennsylvania procedural rules governing direct and collateral review with regard to these claims is an independent and adequate state ground sufficient to support a procedural default. Glass, 65 F.3d at 15; Caswell, 953 F.2d at 857. Petitioner has not demonstrated any extraordinary circumstances that caused this default.

### 4.    Overcoming Procedural Default

Federal habeas review is not available to a petitioner whose constitutional claims have not been addressed on the merits due to procedural default unless such petitioner can demonstrate: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman, 501 U.S. at 750; Carter, 62 F.3d at 595.

Petitioner's failure to raise his Fifth Amendment habeas claims on direct appeal results in a state court procedural default, as does his failure to present those claims in his PCRA proceeding and on appeal from the denial of PCRA relief. See Evans v. Court of Common Pleas, 959 F.2d 1227, 1230 (3d Cir.1992) (emphasizing that, to satisfy the exhaustion requirement, "[a] claim must be presented not only to the trial court but also to the state's intermediate court as well as its supreme court"); Commonwealth v. Bond, 819 A.2d 33, 39 (Pa. 2002)("Even if this Court were to assume that these two claims of trial error were not previously litigated, they would be waived under the PCRA since appellant's present theories could have been presented on direct appeal."); 42 Pa.C.S. §9544(b)(issue is waived if petitioner failed to raise it and the issue could have been raised before trial, at trial, on appeal, in habeas corpus proceeding, or in prior proceeding under

17

PCRA).  Thus, Petitioner must demonstrate either:  1) <u>cause</u> for the default and <u>actual prejudice</u> resulting therefrom; or 2) that failure to review his claims would result in a fundamental miscarriage of justice.  <u>Schlup v. Delo</u>, 513 U.S. 298 (1995); <u>Coleman</u>, 501 U.S. at 749-750.

### a.    Cause and Prejudice

To satisfy the cause standard, Petitioner must demonstrate that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court.  <u>McCleskey v. Zant</u>, 499 U.S. 467, 493 (1991); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  Neither a deliberate strategic decision nor an inadvertent failure of counsel to raise an issue constitutes "cause" unless counsel's performance failed to meet the Sixth Amendment standard for competent assistance. <u>Engle v. Isaac</u>, 456 U.S. 107 (1982); <u>Murray</u>, 477 U.S. at 485-87.  Further, cause for a procedural default is not established simply due to a petitioner's failure to recognize a claim. <u>McCleskey</u>, 499 U.S. at 493.

Petitioner argues that appellate counsel was ineffective for failing to effectively raise trial counsel's ineffectiveness for failing to raise his Fifth Amendment claims.  However, this claim cannot form the basis for "cause" because Petitioner never raised this specific assertion of ineffective assistance as an independent claim in the state courts, and cannot be considered by this Court.  <u>Edwards</u>, 529 U.S. at 452 (ineffective assistance claim must first "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.").  Further, appellate counsel need not raise every possible claim in order to avoid a claim of ineffective assistance. <u>Sistrunk</u>, 96 F.3d at 670.  Thus, Petitioner has not established cause for his failure to raise his Fifth Amendment claims on direct appeal.

Further, Petitioner cannot establish cause for his failure to raise his Fifth Amendment claims during the state court PCRA proceeding, and this procedural default is an independent bar to review of his claims even if he were to overcome the bar imposed by his failure to raise claims on direct appeal.  Petitioner cannot establish cause for his failure to raise his claims during PCRA proceedings by alleging ineffective assistance of counsel because there is no constitutional right to an attorney in state post-conviction proceedings. <u>Pennsylvania v. Finley</u>, 481 U.S. 551 (1987);

18

Murray v. Giarratano, 492 U.S. 1 (1989) (applying the rule to capital cases).  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Wainwright v. Torna, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective assistance)." Coleman, 501 U.S. 722, 752 (1991).  Thus, the alleged ineffectiveness of PCRA counsel in failing to raise issues cannot give rise to "cause" for purposes of procedural default, since, by definition, counsel's performance in a collateral appeal cannot deny Petitioner a "right" to effective assistance of counsel.

It follows, then, that Petitioner has defaulted each of his Fifth Amendment claims, and that he cannot establish cause with respect to those procedural defaults.  Because he has failed to establish cause for his procedural defaults, the Court need not consider the question of actual prejudice. See Murray, 477 U.S. at 533.

### b.    Miscarriage of Justice

Although Petitioner cannot demonstrate the necessary "cause" and "prejudice," this Court may still review his Fifth Amendment habeas claims if he can show that a "fundamental miscarriage of justice would result from a failure to entertain the claim." McCleskey, 499 U.S. at 495.  This Court may use its discretion to correct a fundamental miscarriage of justice if it appears that a "constitutional violation probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. See also Coleman, 501 U.S. at 748; McCleskey, 499 U.S. at 502.  "To be credible," a claim of actual innocence must be based on "reliable evidence not presented at trial," and "show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence presented in his habeas petition." Schlup, 513 U.S. at 324, 327; Calderon v. Thompson, 523 U.S. 538, 559 (1998).  This is a stronger showing than is required to establish prejudice and is found only in a truly "extraordinary" case. Schlup, 513 U.S. at 321.  Indeed, given the rarity of such new "reliable evidence," "'in virtually every case, the allegation of actual innocence has been summarily rejected.'" Calderon, 523 U.S. at 559, quoting Schlup, 513 U.S. at 324.

The only "new" evidence Petitioner appears to be presenting here is that he was under the influence of drugs and alcohol at the time he gave his statement to Officer Trenga, that he was not given his Miranda warnings before making the statement.[8]  This evidence, if presented to a jury, would have done little to overcome Petitioner's own testimony essentially confirming the most incriminating aspects of his police statement.  For instance, the Court notes the following excerpts from the direct examination of Petitioner at trial:

> Q.    You went down on her after she said, No, I don't want you to?
>
> A.    Yes.
>
>        *        *        *
>
> Q.    [referring to the police statement] Question, you think you might have forced it on her.  Your answer, in a sense, yeah.  Which time were you referring?
>
> A.    Saturday.
>
> Q.    You were referring to Saturday?
>
> A.    Yes.
>
>        *        *        *

---

[8]

Petitioner's allegation that "he was never told, and was confused about, the reason he was being questioned at the time he gave the statement" was actually raised by Petitioner during his trial testimony, as evidenced by the following excerpt:

> A.    I was very confused that weekend about why I was there at the police station speaking to this officer.
>
> Q.    You were confused?
>
> A.    Yes, I was.  It was not mentioned to me why I was there - - what I was there for and why I was there to speak about things.
>
> Q.    So you're saying Patrolman Trenga never informed you of the purpose of the investigation?
>
> A.    No, not at all.

(TT at p. 357).

> A.     Okay.  I started kissing her and fondling her and pressing her body.
>
> Q.     Um hum.  Okay.
>
> A.     And I performed oral sex on her.
>
> Q.     And then was the time it - - this was the sexual incident on Saturday that she said, No, I don't want you to?
>
> A.     Yes.
>
> Q.     And you continued nonetheless?
>
> A.     Yes.

(TT at pp. 371, 376, 386, respectively).

In light of the foregoing testimony, this Court is unable to conclude "that it is more likely than not that no reasonable juror would have convicted [Petitioner]" if he had presented evidence that he was intoxicated when he gave his police statement and that he was not given his Miranda rights before making the statement.  Schlup, 513 U.S. at 327.  Thus, Petitioner cannot show that a "fundamental miscarriage of justice would result from a failure to entertain" his Fifth Amendment claims.

Based on the foregoing, the only claims to be considered on the merits are Petitioner's reply brief claims that:  (i) his trial counsel rendered ineffective assistance of counsel for failing to file a motion to suppress his statement to the police; and (ii) his appellate counsel rendered ineffective assistance of counsel for failing to adequately raise and argue on direct appeal whether trial counsel was ineffective for failing to file a motion to suppress his statement to police.

### G.     Standard of Review

Section 2254 of the federal habeas corpus statute provides the standard of review for state court criminal determinations by the federal courts.  28 U.S.C. § 2254.  Specifically, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must

21

have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.  Id. citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982).

Moreover, a federal court may not issue the great writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  Recently, in Williams v. Taylor, 529 U.S. 362, 412- 413 (2000), the United States Supreme Court discussed the independent meanings of the "contrary to" and "unreasonable application" clauses contained within § 2254(d)(1).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412 - 413.

The Supreme Court further clarified that a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.  Id. at 409.  "Under §2254(d)(1)'s unreasonable application clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

Section 2254(d)(1) explicitly limits the deferential review to only those claims that were "adjudicated on the merits in state court proceedings."  42 U.S.C. § 2254(d)(1).  "It follows that when, although properly preserved by the defendant, the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA and explained in Williams do not apply."  Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001).  In such cases, the court should exercise "pre-AEDPA independent judgment" on those claims.  Hameen, 212 F.3d at 248 ("[U]nder the AEDPA the limitation on the granting of an application for a writ of

22

habeas corpus is only 'with respect to any claim that was adjudicated on the merits in state court proceedings.' Hence we exercise pre-AEDPA independent judgment ...."). Exhaustion requires that the claims presented in the federal court have been presented in substantially the same form to the state's highest court, with identity of both facts and legal theory. Bond v. Fulcomer, 864 F.2d 306 (3d Cir. 1989). Even if the claims have been so presented to the state's highest court, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c); Castille v. Peoples, 489 U.S. 346 (1989). And, although the requirement is not jurisdictional, it "should be strictly adhered to because it expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." Landano v. Rafferty, 897 F.2d 661, 669 (1990). The requirement also recognizes the duty, and ability, of the state courts to uphold federal law, and serves the interest of ensuring a fully developed record in the state court. Id. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Here, Petitioner's first claim that his trial counsel was ineffective for failing to file a motion to suppress his statement to the police was decided on its merits by the Superior Court, on direct appeal. (SCR No. 15 at p. 4). However, Petitioner's second claim that his appellate counsel was ineffective for failing to adequately raise and argue the ineffectiveness of his trial counsel in failing to move for the suppression of his police statement was not adjudicated on its merits by the state courts. Rather, in reviewing the claims raised in Petitioner's second PCRA petition, the trial court summarily reached the erroneous conclusion that this issue of appellate counsel's ineffectiveness had been previously litigated and, thus, declined to consider the issue. As a result, there are no state court findings or legal conclusions to which AEDPA deference might apply, and the pre-AEDPA standard will be applied to this issue.

**H.    Merits**

**1.    Ineffective Assistance of Trial Counsel**

Because it was considered on the merits by the state courts, the issue of trial counsel's ineffectiveness requires this Court to determine if the state court's decision was contrary to and an unreasonable application of the standards applicable to claims of ineffective assistance of counsel. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)).

> Thus the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Fretwell, 506 U.S. at 369 (citing United States v. Cronic, 466 U.S. 648, 658 (1984)). See also Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Strickland, 466 U.S. at 690. A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof. Cronic, 466 U.S. at 658.

The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome

24

the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id.

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694 (emphasis added). A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.

In this case, the state court properly identified the standards governing claims of constitutionally ineffective assistance, so that the decision of the state court is not "contrary to" federal law.[9] Whether the state court applied the ineffective assistance standard in an "objectively unreasonable fashion" must now be addressed.

As noted, Petitioner's first ineffectiveness claim challenges his trial counsel's failure to file a motion to suppress his statement to the police. In analyzing this claim, the Superior Court concluded that there was no merit to Petitioner's claim because he failed to prove prejudice. In particular, the Superior Court found as follows:

> .... In his brief, appellant includes several assertions that counsel was ineffective without ever mentioning how counsel's actions affected the outcome of the proceedings. For example, appellant argues that trial counsel was ineffective for failing to file a motion to suppress appellant's statement to the police. Appellant claims that he was intoxicated, that it was his intention to remain silent and he asked for an attorney, but that police pressured him into making a statement.... Even if these events did occur, appellant does not draw this Court's attention to any evidence that prejudice resulted from the admission of this statement. Since there is no showing of prejudice, appellant's claim fails.

(SCR No. 15 at p. 4).

---

[9]

The standards utilized by the Superior Court were actually based upon a prior Superior Court decision, Commonwealth v. Lawson, 762 A.2d 753 (Pa.Super. 2000), which set forth principles to be followed in analyzing ineffectiveness claims that are substantially similar to those pronounced by the United States Supreme Court in Strickland.

This was a reasonable application of the ineffective assistance standard based upon a correct statement of the law under federal constitutional principles. Thus, the state courts' determination in this regard did not result in a decision that is "contrary to," or an "unreasonable application of," clearly established federal law that would justify habeas relief on this claim.

### 2.    Ineffective Assistance of Appellate Counsel

Petitioner's claim of ineffective assistance of appellate counsel must be examined under the same Strickland standards cited above: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687.

The claim in this case is a "layered" claim, such that the alleged ineffectiveness of appellate counsel is based on his failure to adequately raise the ineffectiveness of trial counsel. However, since it has already been determined that the issue of trial counsel's ineffectiveness was effectively rejected on its merits by the state courts, the only real issue before this Court is whether appellate counsel was ineffective in the way he raised and argued the issue of trial counsel's ineffectiveness on direct appeal. In this regard, Petitioner makes the following allegations in his reply brief:

> [Petitioner] also submits that his appellate counsel, Edward J. Hatheway, Esq. rendered ineffective assistance of counsel for failing to adequately raise and argue on direct appeal whether trial counsel was ineffective for failing to file a motion to suppress his statement made to police.
>
> *                    *                    *
>
> Here, appellate counsel, Hatheway failed to develop the facts to support [Petitioner's] claim that trial counsel failed to file a motion to suppress his incriminating statement made to police.
>
> [Petitioner] told Hatheway that he was never read his Miranda warnings prior to giving his statement to police. Hatheway made no effort to investigate [Petitioner's] claim. Had he done so, he would have discovered that a waiver of [Petitioner's] Miranda Rights was never produced.
>
> The lackluster way in which Hatheway presented [Petitioner's] claim on direct appeal falls well below an objective standard of reasonableness.
>
> *                    *                    *
>
> [Petitioner] submits that if appellate counsel had made a proper challenge concerning his Fifth Amendment violations on direct appeal, he may have been granted a new trial.

26

(Document # 22, Petitioner's Reply Brief, at pp. 10-11).

To assist in the development of this issue, this Court held an evidentiary hearing on December 21, 2006. The following are the proposed findings of fact and conclusions of law derived from the relevant evidence and testimony that was presented at this hearing.[10]

## I.      Proposed Findings Fact

1.      At approximately 1:00 a.m. on June 21, 1999, Officers Trenga and Gump of the Meadville Police Department went to Petitioner's apartment, and Officer Trenga asked Petitioner if he would go to the police station to answer a few questions. At the time, Officer Trenga stated that Petitioner was not under arrest and could leave at any time. (EHT at pp. 14-15). Petitioner responded that he was tired and wanted to go to bed. (EHT at p. 15). Officer Trenga replied that it was very important and that he needed to speak to Petitioner. (Id.).[11]

2.      Petitioner was taken to the police station in the Officers' marked police car and was led to a small office with a desk and two chairs in it. Petitioner was left alone in the room for a brief period of time, then Officer Trenga returned to the room with a small tape recorder, a note pad, and a pen. (EHT at pp. 20-21).

3.      Officer Trenga testified that, prior to asking if he could tape record their conversation, he read Petitioner his Miranda rights and had him sign a waiver acknowledging that he understood his rights. (EHT at pp. 94-96, 112). However,

---

[10]

The evidentiary hearing transcript has been filed in this case at Document # 41. All references to the evidentiary hearing transcript will be identified by the abbreviation "EHT," followed by the relevant page number(s).

[11]

Much of Petitioner's evidentiary hearing testimony leading up to this point was spent recounting the amount of alcohol and drugs Petitioner consumed prior to the police officers' arrival at his apartment around 1:00 a.m. on June 21, 1999. Since the focus of this Court's inquiry is on determining whether the failure to file a motion to suppress Petitioner's police statement was prejudicial to Petitioner, such that the outcome of his trial would have been different, this Court necessarily presumes that the statement could have been successfully suppressed. Thus, the amount of alcohol and drugs Petitioner may have consumed prior to giving his statement is not relevant to this Court's determination.

Petitioner testified that he was never read his Miranda rights and he never signed a waiver form, or any other paperwork. (TT at p. 22).

4.    After criminal charges were filed against Petitioner, Edward Hatheway, Esquire, initially represented him, but withdrew before conducting any discovery, due to a potential conflict of interest. (TT at p. 29). Petitioner then applied for an attorney at the Public Defender's office, and Ross Prather, Esquire ("Prather") was appointed to represent him. (Id.).

5    Petitioner told Prather that he was not informed of his Miranda rights prior to giving his statement to the police, and, thus, asked Prather to file a motion to suppress the statement. (TT at p. 30, 63).

6.    Prather noted that the police statement contained a paragraph indicating that Petitioner was read his Miranda rights and that Petitioner signed a waiver form (EHT, Petitioner's Exhibit 5); however; during discovery, Prather requested, but never received, a copy of the Miranda rights waiver form purportedly signed by Petitioner. Prather was told by the District Attorney shortly before trial that the waiver form could not be located. (TT at pp. 62-63).

7.    Prather acknowledged that Petitioner's police statement contained "one very short segment ... which was particularly troubling with regard to [Petitioner's] culpability[,]" and that "[t]here may have been about two or three additional spots that were also somewhat troublesome, but there was one that was particularly bad." (TT at p. 66).

8.    "The worst part" of the police statement noted by Prather was "the wording ... where ... it says, "you think you might have forced it on her," and he says, "in a sense, yeah." Prather opined that this portion of the statement "certainly would not bode well for a defendant in this situation." (TT at pp. 67-68).

9.    Prather acknowledged that, prior to the start of the trial, there was no charge against Petitioner indicating that he forcibly performed oral sex on Devore. (TT at pp. 68-69).

28

10.  After the IDSI charge at Count V of the criminal information was amended to change the challenged conduct from fellatio to cunnilingus, Prather conceded that "you could certainly make the argument that you now have very good cause to suppress a statement that otherwise the defense had not taken any action to suppress." Nevertheless, Prather testified that he "really did not make the tie of the amended Information and the [police] statement, this bad part of the statement." (TT at p. 73).

11.  Prather acknowledged that there was no way the filing of a motion to suppress the police statement would have hurt Petitioner's case. (TT at pp. 73-74).

12.  Prather never filed a motion to suppress Petitioner's police statement. (TT at pp. 30, 64).

13.  Prather testified that, although he contemplated filing a suppression motion prior to trial, he "determined that the motion was not strong enough to pursue." (TT at p. 88).

14.  With regard to the failure to suppress the police statement, Prather acknowledged that, had the statement been suppressed, Petitioner's case would have been stronger and the Commonwealth's case would have been weaker. (TT at p. 79).

15.  Prather stated that it was his trial strategy all along to have Petitioner testify, because it was the victim's word against Petitioner's word, without any other substantial physical evidence having been presented. (TT at p. 86).

16.  On direct appeal of his conviction, Petitioner's court-appointed appellate counsel raised the following issue, among others: "whether appellant's trial counsel rendered ineffective assistance of counsel by failing to file a motion to suppress his statement to police?" (SCR No. 13 at p. 9).

17.  Upon consideration of Petitioner's direct appeal, the Pennsylvania Superior Court issued a Memorandum Opinion, dated December 18, 2001, in which it addressed the foregoing ineffective assistance claim as follows:

29

Appellant fails to prove that prejudice resulted in regards to any of his ineffectiveness claims. In his brief, appellant includes several assertions that counsel was ineffective without ever mentioning how counsel's actions affected the outcome of the proceedings. For example, appellant argues that trial counsel was ineffective for failing to file a motion to suppress appellant's statement to the police. Appellant claims that he was intoxicated, that it was his intention to remain silent and he asked for an attorney, but that police pressured him into making a statement... **Even if these events did occur, appellant does not draw this Court's attention to any evidence that prejudice resulted from the admission of this statement. Since there is no showing of prejudice, appellant's claim fails.**

(SCR No.15 at p. 4)(emphasis added).

### J.    Proposed Conclusions of Law

As noted earlier, Petitioner's claim of ineffective assistance of appellate counsel must be examined under the same Strickland standards applicable to a claim of ineffectiveness assistance of trial counsel: 1) counsel's performance was unreasonable, and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687.

If a court finds no merit in a claim of ineffective assistance by trial counsel, appellate counsel cannot be found ineffective for failing to raise those same meritless issues on appeal. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995)("When a defendant alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue. If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel."). In other words, if there is no ineffective assistance of counsel at the trial level, there can be no ineffective assistance of counsel on appeal for failure to raise the same issue. See Jones v. Barnes, 463 U.S. at 754 (a criminal defendant has no constitutional right to insist that appellate counsel advance every non-frivolous argument the defendant wants raised); Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (appellate counsel does not have a duty to raise every possible claim).

Here, the Superior Court summarily rejected Petitioner's direct appeal claim that trial counsel was ineffective for failing to file a motion to suppress his police statement because Petitioner's appellate counsel failed to "draw [the] Court's attention to any evidence that prejudice

resulted from the admission of this statement." (SCR No. 15 at p. 4).  As a result, this Court has little difficulty finding that the performance of Petitioner's direct appellate counsel was unreasonable under the first prong of the <u>Strickland</u> standards.  It is left to be determined whether appellate counsel's failure to effectively argue prejudice was, itself, prejudicial to Petitioner, such that Petitioner's ineffectiveness of trial counsel claim would have been successful on direct appeal, but for appellate counsel's unreasonable performance.  To answer this question, this Court must examine the merits of Petitioner's claim that he was prejudiced by trial counsel's failure to file a motion to suppress.  Again, the issue before this Court is not whether the statement could have been successfully suppressed, but whether the outcome of the trial would have been different as a result of having the statement suppressed.  Only by addressing the latter issue can the Court determine the ultimate issue of whether Petitioner's direct appeal would have been successful had appellate counsel adequately raised the issue of prejudice.

Petitioner's argument that he was prejudiced by trial counsel's failure to file a motion to suppress his police statement is set forth in his Reply Brief, as follows:

> Because [Petitioner's] incriminating statement was entered into evidence, this placed [Petitioner] into a situation where he had to testify before a jury about a crime that he was not only innocent of, but completely unaware of from the outset.
>
> When [Petitioner] testified at trial on direct examination, cross examination, and redirect examination, he was made to answer questions concerning his incriminating statement made to police about performing cunnilingus upon the alleged victim - his ex-girlfriend.
>
> [Petitioner] strongly believes that the jury's decision was heavily influenced by [Petitioner's] incriminating statement and testimony concerning the same was detrimental and prejudicial to the outcome.

(Document # 22 at pp. 9-10).

Succinctly stated, Petitioner is claiming that the admission of his police statement into evidence compelled him to testify on his own behalf at trial to explain "his incriminating statement made to police about [forcibly] performing cunnilingus upon the alleged victim."  Thus, Petitioner would have this Court believe that either (1) he would not have testified at trial at all if the police statement had been suppressed, or (2) if he had still testified, his testimony would have been less

damaging if the statement had not been admitted into evidence. This Court cannot accept either premise.

As Prather noted during his evidentiary hearing testimony before this Court, it was his trial strategy all along to have Petitioner testify because it was the victim's word against Petitioner's word. Without Petitioner's testimony, there would have been no other exculpatory evidence presented to the jury on his behalf. Petitioner's counsel would have, thus, been faced with the unreasonable, and likely insurmountable, task of completely discrediting the victim's testimony without the benefit of countervailing evidence. Under such circumstances, this Court cannot conclude that the result of the trial would have been more favorable to Petitioner had the police statement been suppressed and he had not testified.

Alternatively, Petitioner argues that, if the police statement had been suppressed and he had still testified, his testimony would have been less damaging because he would not have had to overcome his own "incriminating statements." However, this Court cannot overlook the fact that, given numerous chances to contradict or "explain away" his "incriminating statements" in the police report, he repeatedly reaffirmed the truth of the statements by testifying that he continued to perform oral sex on the victim after she told him to stop. The Court presumes that Petitioner's testimony in this regard was truthful. Thus, to accept Petitioner's argument that his testimony would have been less damaging had he not been confronted with his police statement is to believe that he would have lied under oath and testified that he didn't perform oral sex on the victim after she said "no." The Court finds such an argument untenable.

Accordingly, this Court finds no merit in Petitioner's claim that he was prejudiced by trial counsel's failure to suppress his statement to the police because he has failed to demonstrate that the outcome of the trial would have been different. As a result, Petitioner's claim that trial counsel was ineffective for failing to file a motion to suppress the police statement is, likewise, found to be without merit. Because this Court has found no merit in Petitioner's claim that his trial counsel provided ineffective assistance, appellate counsel cannot be found to be ineffective for failing to adequately raise a meritless issue on appeal. See Jones, 463 U.S. at 754; Sistrunk, 96 F.3d at, 670.

**K.     Certificate of Appealability**

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id.(28 U.S.C. § 2253(c)).  Petitioner has not made a showing that he has been denied any of his constitutional rights.  Accordingly, a certificate of appealability should be denied.

**III.     CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of *Habeas Corpus* be dismissed, that this Court's proposed findings of fact and conclusions of law be adopted, and that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.  See, e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: March 5, 2008

cc:     The Honorable Sean J. McLaughlin
        United States District Judge

33