IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES HARRY HODSON, III, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C. A. No. 05-92 Erie |
| | ) |
| MARILYN BROOKS, et al., | ) |
| | ) |
| Respondents. | ) |

**PETITIONER, JAMES HARRY HODSON, III'S, OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

AND NOW, comes the petitioner, James Harry Hodson, III, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and files his objections to the Magistrate Judge's Report and Recommendation:

PROPOSED FINDINGS OF FACT

Jim agrees with Chief Magistrate Judge Baxter that it must be presumed that his statement to Officer Trenga could have been successfully suppressed.  R and R p. 27 n.11. Accordingly, Jim does not have any objections to the R and R's proposed findings of fact.

PROPOSED CONCLUSIONS OF LAW

The R and R finds that Jim was not prejudiced by his appellate counsel's deficient performance in presenting the ineffectiveness of trial counsel claim to the Pennsylvania Superior Court because the outcome of Jim's trial would not have been different had Jim's statement to Officer Trenga been suppressed.  Jim objects to this proposed conclusion of law on two grounds. First, legally it applies the wrong standard for proving prejudice in an ineffective assistance of counsel claim.  Second, applying the correct standard to the facts of Jim's case it is quite clear

1

that, had Jim's statement been suppressed, there is a reasonable probability that Jim would not have been convicted of the IDSI (cunnilingus) count.

      A.      The Proper Standard For Establishing Prejudice.

The R and R accurately sets forth the familiar test for establishing ineffective assistance of counsel set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052 (1984). To find counsel ineffective a court must first find that counsel's performance was unreasonable and second, that counsel's unreasonable performance prejudiced the defense. R and R p. 24. The R and R also accurately states that "[t]o prove prejudice, a defendant must show that there is a reasonable probability that, <u>but for</u> counsel's unprofessional errors, the result of the proceeding would have been different," and that "[a] "reasonable probability" is one that is sufficient to undermine confidence in the outcome." <u>Id</u>. (emphasis in original) But when it came time to apply the prejudice standard to Jim's case, Chief Magistrate Judge Baxter failed to properly apply the prejudice standard.

When applying the prejudice prong of <u>Strickland's</u> ineffective assistance of counsel test to Jim's appellate counsel, Chief Magistrate Judge Baxter stated "the issue before this Court is not whether the statement could have been successfully suppressed, but **whether the outcome of the trial would have been different** as a result of having the statement suppressed." R and R p. 31 (emphasis added). This is the wrong standard. Chief Magistrate Judge Baxter required Jim to prove that he would have been acquitted of Count V, IDSI (cunnilingus), had his statement been suppressed. The Supreme Court rejected this standard in <u>Strickland</u>. <u>Id</u>. at 693, 2068 ("we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."). As the Third Circuit explained in <u>Jacobs v. Horn</u>, 395 F.3d

2

92, 105 (3rd Cir. 2005), "[a petitioner] need not show that counsel's deficient performance more likely than not altered the outcome in the case–rather, he must show only a probability sufficient to undermine confidence in the outcome. This standard is not a stringent one." (internal quotations and citations omitted). Thus, the issue before Chief Magistrate Judge Baxter was not **whether the outcome of the trial would have been different** as a result of having the statement suppressed. The real issue was, and is for this Court, whether there is a reasonable probability that the outcome of the trial would have been different as a result of having the statement suppressed sufficient to undermine confidence in the outcome of Jim's trial. The answer to that question is a resounding yes.

      B.      Appellate Counsel's Unreasonable Performance Prejudiced Jim.

When the proper prejudice analysis is applied to Jim's case, it becomes readily apparent that counsel's failure to have Jim's statement to Officer Trenga suppressed undermines any confidence in the outcome of Jim's trial. To understand the importance of Jim's statement to Officer Trenga that he may have forced oral sex on the victim, one need look no farther than the trial judge's opinion denying Jim's second PCRA petition. In the midst of ruling on Jim's claim that trial counsel had been ineffective for asking the victim about a prior occasion on which she alleged Jim had raped her but had failed to report the rape to the police, Judge Miller succinctly summarized Jim's trial.

> Throughout the weekend the defendant and victim were in and out of bed. The victim had numerous opportunities to seek help or to leave. There was a time when the defendant left the apartment so the victim was free to get help or leave. At times during the weekend the victim's brother, who lived in a space nearby, was present and could have been contacted. The funeral for the deceased friend had been scheduled for Saturday and the victim had a legitimate excuse to leave the apartment and escape the defendant by going to the funeral.

> The defendant admitted that he did perform oral sex on the victim. Since the jury acquitted the defendant of the rape and IDSI (fellatio) counts and since he admitted to committing simple assault on the victim, the only issue on the remaining IDSI (cunnilingus) count is whether or not the act of cunnilingus, admitted to by the defendant, was with or without the victim's consent.
>
> ********
>
> The defense strategy was, inter alia, to show how ridiculous the victim's testimony was with respect to her fear of the defendant and to show, directly and circumstantially, that the victim consented to the weekend of sex.

SCR Tab 22, p. 4.[1]

Judge Miller ultimately found trial counsel was not ineffective for raising a prior bad act, the alleged prior rape, because Jim had not been prejudiced by counsel's actions since Jim was acquitted of the rape charge. Judge Miller concluded his opinion by stating

> The jury really saw through most of the Commonwealth's case. Quite simply, the defendant's testimony that he engaged in cunnilingus with the victim brought this convoluted case down to one very simple issue - whether or not the defendant did so through the use of "forceable compulsion."

Id at 14.

In the Commonwealth's brief to the Superior Court on Jim's appeal of the denial of his second PCRA petition, the Commonwealth argued that Jim had not been prejudiced by trial counsel's questioning of the victim regarding the allegation of a prior, unreported rape, as the point of the questioning was to cast doubt on the victim's claim that Jim had raped her over the course of the weekend in question. SCR Tab 25 p. 10. "In fact, 20/20 hindsight shows that counsel's strategy was obviously effective in obtaining an acquittal on all of the charges except those that Defendant confessed to or admitted to committing, that is the IDSI (cunnilingus) and

---

[1]The state court record is contained in the file in the clerk's office. The various documents in the record are distinguished by tabs. Citations to the state court record are SCR Tab __, p. __.

4

the simple assault!" Id.  The Superior Court agreed with the Commonwealth, stating:

> In addition, Appellant was clearly not prejudiced by the accusation of an earlier rape, as he was acquitted of the later rape, as well as of two other sex related crimes.  **Indeed, as the Commonwealth points out, he was convicted only of offenses to which he had, in effect, confessed.**

SCR Tab 26, p. 4. (emphasis added).

Thus, the trial court found that the only real issue at trial was whether Jim engaged in cunnilingus through the use of forceable compulsion, and the Commonwealth and the Superior Court found that Jim's statement to Officer Trenga amounted to a confession that he used forceable compulsion to perform cunnilingus on the victim.

A review of the prosecutor's opening statement and closing argument highlight the importance of Jim's statement to Officer Trenga to the Commonwealth's case.  In the Commonwealth's opening statement the prosecutor told the jury that Jim had been questioned by the police and that

> He mentioned the fact that a few times she would say no to him, but, nonetheless, he would perform cunnilingus.  When asked did you force sex upon her, he said in a sense – kind of in a sense, yes.  These are facts that you can take into account.

SCR Tab 4, p. 27.

In the Commonwealth's closing argument the prosecutor focused on Jim's statement to Officer Trenga to prove forceable compulsion.

> Like he said, he did force it upon.  You – well, did you force it upon her.  In a sense kind of.  Ladies and gentlemen, what is ambiguous about the word force **when you're sitting talking to a police officer about sex while its's being recorded at the police station that day**.  There is nothing ambiguous.  There is no misunderstanding.  They knew what they were talking about and he asked the words did you force it upon her and he said, In [sic] a sense kind of.  He knew what he was talking about.

Id. at p. 500.

The prosecutor later read the portion of Jim's statement to Officer Trenga about Jim possibly forcing oral sex on the victim verbatim to the jury and used the statement to make the point that Jim had forced cunnilingus upon the victim:

> This is what is really interesting.  She said no so his next response was to – remember – oh, wait – Page 10.  You're telling me you were upset but you still wanted to have sex with her.  Defendant, Yeah.  You think you might have forced it upon her?  Defendant, In a sense, yeah.  But did she ever tell you no or stop?  Defendant, She goes – well, she actually would say, I don't want you to and then I would go down on her.
>
> Meaning would you go between her legs and have oral sex?  Yeah.  Think about this.  He says that she said no, she said stop, and the next action is when she says stop is – well, he just decided to move south on this.  Is this a guy that when a women says no or more specifically Lynn DeVore says no, then all of a sudden he stops after she said stop.  The next thing he did was he proceeded to perform another sexual act. . . .
>
> She would actually say, I don't want you to.  Is there something ambiguous about the word force or about I don't want you to.  What exactly does she have to say besides I don't want you to for him to understand, do not perform oral sex on me.

Id. at 514-15.

Despite all of this evidence concerning how crucial Jim's statement to Officer Trenga was in convicting Jim, Chief Magistrate Judge Baxter found that there was not a reasonable probability that had Jim's statement been suppressed the outcome of Jim's trial would have been altered.  This conclusion can not stand.

Given Jim's acquittal on the rape, sexual assault, and IDSI (fellatio) charges, it is clear that the jury did not believe the victim's testimony.  As Judge Miller stated, "[t]he jury really saw through most of the Commonwealth's case."  SCR Tab 22, p. 14.  The only distinction between the rape, sexual assault and IDSI (fellatio) counts and the IDSI (cunnilingus) count was Jim's

statement to Officer Trenga that he may have forced the cunnilingus on the victim. Jim's statement was the key piece of evidence supporting the conviction on the IDSI (cunnilingus) count. This Court simply can not believe that had the jury not heard that statement that fact would have had no impact on the verdict.

Chief Magistrate Judge Baxter found that there were only two ways Jim could show he was prejudiced by the admission of the statement to Officer Trenga; (1) Jim would not have testified had the statement been suppressed, and (2) had he testified his testimony would have been less damaging had the statement been suppressed. R and R. pp. 31-32. But Chief Magistrate Judge Baxter missed the most important way in which Jim was prejudiced by the introduction of the statement: **The Commonwealth was able to introduce Jim's statement as an admission which could be considered by the jury as substantive evidence of Jim's guilt**. Had the statement been suppressed, the Commonwealth could not have introduced the statement in its case-in-chief. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643 (1971). This point was made to Chief Magistrate Judge Baxter at the evidentiary hearing, EHT 148-49, but she failed to understand the point because she failed to understand how Jim's testimony would have been different, but still truthful, had the statement to Officer Trenga been suppressed.

The R and R finds no prejudice because at trial, after the Commonwealth had been allowed to use Jim's statement in its case-in-chief, Jim testified and was "given numerous chances to contradict or 'explain away' his 'incriminating statements' in the police report," but he "repeatedly reaffirmed the truth of the statements by testifying that he continued to perform oral sex on the victim after she told him to stop." R and R p. 32. Because this testimony is presumed to be truthful, the R and R then concludes that Jim's testimony would have been

7

identical had the statement not been introduced in the Commonwealth's case-in-chief and if Jim's testimony was not identical that would mean Jim was lying. Id. What Chief Magistrate Judge Baxter failed to grasp was that if the statement had been suppressed, Jim would not have been forced to try to "explain away" his incriminating statements to Officer Trenga, and Jim could have testified truthfully on direct examination and prevented the introduction of his statement to Officer Trenga by not giving any testimony on direct examination as to whether the oral sex he performed on the victim was or was not consensual.

The First Circuit explained in United States v. Morla-Trinidad, 100 F.3d 1, 5 (1st Cir. 1996), "while defendants are free to testify truthfully on their own behalf . . . without opening the door to impeachment, an affirmative resort to perjurious testimony may be exposed by impeachment with illegally obtained evidence." (internal quotations and citations omitted). But, "the government may not 'smuggle[] in' the impeaching opportunity with a cross-examination that has 'too tenuous a connection with any subject opened upon direct examination.'" Id. (quoting United States v. Haven, 446 U.S. 620, 626, 100 S.Ct. 1912, 1916 (1980)). This case law makes clear that if a statement has been suppressed due to a Miranda violation, the defendant controls, through his testimony, whether the statement may be used by the government for impeachment purposes. As long as the defendant testifies truthfully and does not open the door to the statement's introduction for impeachment purposes by giving testimony that is contrary to the suppressed statement, the government can not "smuggle in" the impeachment by trying to force the defendant to testify inconsistently with the statement by cross-examining on subjects not opened up on direct examination.

Applying this case law to Jim's case, the Court can see that by avoiding any testimony

that the cunnilingus was consensual, Jim and his counsel could have avoided opening the door for the use of his statement to Officer Trenga to impeach him on the issue of consent. Jim's testimony would be truthful, he performed oral sex on the victim, but, by not giving any testimony as to whether the oral sex was consensual, Jim's testimony would not contradict his statement to Officer Trenga and the Commonwealth would not have been able to smuggle in Jim's statement to Officer Trenga that the cunnilingus may have been forced upon the victim by questioning Jim on cross-examination about an issue that was not discussed on direct examination, i.e. was the cunnilingus consensual. Thus, as required by law, Jim would have been able to control whether the suppressed statement would be used by the Commonwealth for impeachment.

     Chief Magistrate Judge Baxter's rationale appears to be as follows: 1) the Commonwealth used Jim's statement in its case-in-chief; 2) Jim was forced to respond to the statement because it had been introduced by the Commonwealth; 3) Jim's testimony was truthful; 4) even if the statement had been suppressed any testimony from Jim that was in any way different than his testimony in response to the Commonwealth's use of the statement would be untruthful; 5) thus the Court must assume Jim's "truthful" testimony would have been identical whether the statement was suppressed or not. This analysis fails to understand that if the statement had been suppressed Jim could have testified truthfully at trial but not give any testimony at all concerning whether or not the cunnilingus he performed on the victim was consensual, and the Commonwealth would not have been allowed to cross-examine Jim with his statement to Officer Trenga. Thus, while Jim's testimony would have been different had the statement been suppressed, that does not mean that Jim's testimony would have been untruthful. The issue of

Jim's statement to Officer Trenga simply would not have been discussed.

Another failing in Chief Magistrate Judge Baxter's R and R is that even if Jim had opened the door for the use of his statement for impeachment purposes, the statement could not be used to prove the truth of the matters asserted in the statement, i.e. that Jim forced cunnilingus on the victim. Morla-Trinidad, 100 F.3d at 6 n.5. Even if the Commonwealth had been allowed to impeach Jim with his statement to Officer Trenga, which would not have happened as explained above, using the statement for impeachment purposes is much different than introducing the statement as substantive evidence of guilty. Had the Commonwealth been allowed to use the statement for impeachment purposes the trial court would have been compelled to instruct the jury that they could only consider the statement to Officer Trenga when evaluating Jim's credibility and not as substantive proof of the IDSI (cunnilingus) charge. Id. Since juries are presumed to follow their instructions, Richardson v. Marsh, 481 U.S. 200, 206-07, 107 S.Ct. 1702, 1707 (1987), the Court must presume that even if the jury had heard Jim's statement to Officer Trenga as evidence impeaching Jim's credibility, the jury would not have considered the statement as substantive evidence of Jim's guilt. As the jury clearly did not believe the testimony of the victim with regard to Jim forceably raping her, sexually assaulting her, and forceably compelling her to perform fellatio, absent Jim's statement to Officer Trenga that he forceably performed cunnilingus on the victim as substantive evidence, there is a reasonable probability that had the statement been admitted only for impeachment purposes the outcome of the trial would have been different.

## CONCLUSION

Jim's statement to Officer Trenga was a confession to the IDSI (cunnilingus) charge. Had

that confession been suppressed, there is a reasonable probability that Jim would not have been convicted of the IDSI (cunnilingus) charge. Chief Magistrate Judge Baxter failed to grasp that she could not base her reasonable probability analysis on Jim's trial testimony as he was forced in that testimony to explain his statements to Officer Trenga. The proper analysis realizes that had Jim's statement to Officer Trenga been suppressed, the Commonwealth would not have been able to introduce the statement in its case-in-chief, Jim could have testified truthfully without opening the door to being impeached by the statement, and the Commonwealth would have lost the only piece of evidence that distinguished the IDSI (cunnilingus) charge from the rape, sexual assault, and IDSI (fellatio) counts on which the jury acquitted Jim. This Court can have no confidence in the result of Jim's trial given the ineffective assistance of his trial and appellate counsel. Accordingly, this Court should reject Chief Magistrate Judge Baxter's proposed conclusions of law, find that Jim received ineffective assistance of counsel both at the trial and appellate level, and issue a writ of habeas corpus.

Respectfully submitted,

/s/ Thomas W. Patton
Thomas W. Patton
Assistant Federal Public Defender
PA I.D. No. 88653